COLE, Judge.
Plaintiff, Stacy Stewart, filed this suit seeking damages for personal injury and mental anguish allegedly sustained as a result of a battery committed upon her by defendant, Danny Vidrine. Defendant answered, denying the battery, and reconvened, demanding damages for battery and for the alleged wrongful towing of his automobile. Subsequently, the trial court issued written reasons for judgment, finding in favor of plaintiff on the main demand and awarding her $500 in damages. The trial court implicitly rejected defendant’s recon-ventional demand. Prom the judgment of the trial court, defendant appeals. Plaintiff answered the appeal seeking an increase in quantum. We affirm.
The following issues are raised by defendant’s appeal and plaintiff’s answer to the. appeal:
1. Did the trial court err in finding defendant, rather than plaintiff, was the aggressor;
2. Did the trial court err in concluding defendant used excessive force in defending himself; and
3. Is the $500 award to plaintiff manifestly inadequate or excessive?
The events which led to this lawsuit occurred early on the morning of September 23, 1979. At the time of the occurrence, plaintiff was working as night manager of the Stop-N-Go on Bob Petit Street in Baton Rouge. In performing these duties, she was the only employee on duty at the store on the morning in question.
The testimony given by plaintiff and defendant concerning the alleged battery is sharply contradicting. The only other per *415 son to testify concerning the circumstances of the incident was Holly Myers, a friend of defendant’s.
Plaintiff testified the Stop-N-Go store at which she worked is located in close proximity to several bars. On many occasions, patrons of the bars would park in the lot provided for customers of the store. Stop-N-Go had a policy of having these vehicles towed from the parking lot. In order to have these cars towed, the employee of Stop-N-Go would contact Lewis Wrecker Service. When the owners of the cars returned, they were given a phone number to call to reclaim their cars.
On the morning in 'question, the employee who had been running the store prior to plaintiff’s arrival had called the wrecker service to pick up six or seven cars parked in the store’s lot. The wrecker did not arrive until after plaintiff had begun her duties. Plaintiff signed the slips required by the wrecker, and those cars were towed away. Plaintiff testified she made certain none of the cars belonged to any customer of the store.
Plaintiff further testified that about 1:00 A.M. or 1:30 A.M. defendant entered the store to find out what had happened to his car. He was very abusive and used vulgar language at this time. Plaintiff testified he seemed to be intoxicated. Plaintiff stated defendant continued to curse her and began banging on the customer counter behind which plaintiff worked. Plaintiff testified she finally became fed up with defendant’s abuse and attempted to slap him. She stated he avoided her attempt to hit him by grabbing her arm. She said he then grabbed the back of her head and began slamming it against the counter.
Plaintiff further testified she suffered a headache and neck pain as a result of the incident. The next day, which was a Monday, she consulted Dr. Kenneth Cranor for treatment of her injuries.
Defendant’s version of the incident varied sharply from that of plaintiff. He testified he had been at a bar, which was adjacent to the Stop-N-Go store, called Faps. He stated he had only drunk one beer while at Faps. He testified that, before going into Faps, he had parked his car across the street at an apartment complex. He stated he and a friend left Faps at approximately 12:00 midnight and crossed Bob Petit Street to get his car. He then drove back across the street and parked in the Stop-N-Go lot. He testified he and his friend went into the store to buy two soft drinks. Defendant stated they stopped at the magazine rack for a while, before paying for the drinks and departing the store. According to defendant, he and his friend were in the store for 10 to 15 minutes.
Defendant further testified that, when he and his friend left the store, they proceeded to sit on a car in the parking lot for about 5 minutes while consuming their soft drinks. At that point, another friend of defendant, Holly Myers, asked him to bring her home. Defendant then went to where he had parked his car and found it was not there.
Defendant stated that, at this point, he went back into the store and confronted plaintiff as to the whereabouts of his car. Defendant admits he was upset and began to curse plaintiff. He stated plaintiff then . hit him on the left side of his face, resulting in a cut on the inside of his mouth. Defendant testified he then grabbed plaintiff’s shoulder to prevent her from hitting him again. He testified he then released her and left the store.
Holly Myers testified on defendant’s behalf. She confirmed defendant’s story about her asking for a ride home. She testified she saw plaintiff strike defendant on the face. At that point she was afforded a ride home, and left without observing anything further.
In his first two specifications of error, defendant contends the trial court erred in finding he was the aggressor in the incident and that he used excessive force in defending himself. Each of these issues are factual in nature, Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir. 1977), and, as such, the trial court’s findings should not be. reversed unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*416 The trial court issued written reasons for judgment in which it found defendant was the aggressor in the confrontation with plaintiff and he used unreasonable and unnecessary force in attempting to find out the whereabouts of his vehicle. A determination of whether or not a defendant used excessive force is not material unless or until it is found the plaintiff was the aggressor. Andrepont v. Naquin, supra. The trial court’s reasons make clear its decision is posited on a finding that plaintiff was not the aggressor; and therefore, the physical force used by defendant was not justified. See Sherwood v. Sepulvado, 362 So.2d 1161 (La.App.2d Cir. 1978); Skains v. Tidwell, 359 So.2d 247 (La.App. 2d Cir. 1978). Hence, defendant’s contention that the trial court erred in finding he used excessive force lacks relevancy.
A determination concerning which party was the aggressor in the instant case hinges upon an evaluation of the respective credibility of plaintiff and defendant. If defendant’s story is true, then plaintiff was obviously the aggressor. He testified plaintiff struck him first and he then grabbed her in self-defense. Ms. Myers, to some extent, corroborated defendant’s story. However, the testimony of both defendant and Myers is highly improbable in many respects. It is particularly unusual that defendant could remain in the store for 10 or 15 minutes without noticing his car was being towed from the lot. His testimony also does not give any indication of how plaintiff sustained the injury to her head.
Plaintiff’s testimony, on the other hand, seems more believable. She testified defendant had not been in the store at the time his car was towed. This appears much more plausible than defendant’s story that he was at a bar next door to the store, then crossed the street to get his car, and drove it back across the street to go to the store. Moreover, the doctor’s report concerning the injuries sustained by plaintiff coincides perfectly with the type of attack that defendant allegedly made upon her.
The trier of fact has great discretion in evaluating credibility of witnesses, and its reasonable evaluations should not be reversed on appeal. Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La.1979); Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La. App. 1st Cir. 1981). We find the trial court’s evaluations in the instant case were reasonable and therefore warrant the conclusion defendant was the aggressor.
Were we to disagree with the trial court’s finding that defendant was the aggressor, our conclusion would not negate defendant’s liability. Assuming plaintiff first slapped defendant, causing him to defend himself, and disregarding as we must his highly provocative words, the evidence amply supports the trial court’s additional finding of unreasonable and unnecessary force employed by defendant. Where a person responds to an aggressive act or seeks to defend himself from real or apparent attacks by others but uses more force than is reasonably necessary to repel the aggression or apparent aggression, the use of force in excess of what is necessary results in liability for injuries caused by the employment of such unnecessary force. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Freeman v. Bell, 366 So.2d 197 (La.App. 2d Cir. 1978), writ refused, 1979; Andrepont v. Naquin, supra.
The remaining issue is that of quantum. Both parties object to the trial court’s award of $500 to plaintiff. An award made by the trial court must not be altered unless the court clearly abused its discretion. Unless an abuse of discretion is found initially, the award in other cases are not pertinent. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The trial court found plaintiff’s injuries were not serious. This conclusion is supported by Dr. Cranor’s report, which states in part:
“It is my impression that this patient sustained a cervical sprain at the time of the above noted incident as well as a contusion and hematoma to the left side of her forehead. I expect that both will clear within three weeks time without *417 any permanent anatomical physical impairment.”
Also, plaintiff candidly admitted the pain she experienced from her injuries terminated within three to five days of the altercation. Under the strictures of Reck and Coco, the $500 award to plaintiff cannot be considered an abuse of discretion.
Affirming the judgment of the trial court, we assess all costs against the defendant.
AFFIRMED.