703 So.2d 117 (1997)
Adrian M. AYCOCK and State Farm Mutual Automobile Insurance Company
v.
JENKINS TILE COMPANY and Marshall Courtney.
David COURTNEY
v.
JENKINS TILE COMPANY, Audubon Indemnity Company, and Marshall Courtney.
Nos. 96 CA 2348, 96 CA 2349.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
Writ Denied February 13, 1998.
*119 W. Ransom Pipes, Ward & Clesi, Baton Rouge, for Plaintiffs-Appellees Adrian M. Aycock and State Farm Mutual Automobile Ins. Company.
Johnnie A. Jones, Jr., Baton Rouge, for Plaintiff-Appellant David Courtney.
Walter L. Smith, III, Gunn, Smith & Kaster, Baton Rouge, for Defendant-Appellee Jenkins Tile Company, Inc.
W. Steven Mannear, Poynter, Mannear & Colomb, Baton Rouge, for Defendant-Appellee Marshall Courtney.
William E. Willard, Powers, Clegg & Willard, Baton Rouge, for Defendant-Appellee Audubon Indemnity Company.
Before GONZALES and PARRO, JJ., and TYSON[1], J. Pro Tem.
PARRO, Judge.
This appeal is brought by a passenger who was injured in a collision which occurred when the truck in which he was riding turned left in front of an oncoming vehicle. He appeals the dismissal of his claims against the driver's employer and its insurer, as well as the amount of damages awarded by the trial court against the driver of the truck.

FACTUAL AND PROCEDURAL BACKGROUND
Marshall Courtney ("Marshall") and his twin brother, David Courtney ("David"), were employed by Jenkins Tile Company ("Jenkins"). Their brother, Lionel Courtney ("Lionel"), also worked for Jenkins and was their supervisor. On December 11, 1992, a Friday afternoon, Marshall and David were using a company pickup truck on the job and returned to the Jenkins site after working hours. The gate was locked, so they took the truck home. Lionel testified this procedure was company policy, so vehicles would not be left outside the locked premises. The employee was to take the vehicle home, park it, and not use it again until driving it back to work the following work day. Under this policy, the truck should not have been used again until Monday morning when Marshall and David returned with it to work. All of the witnesses who testified concerning the *120 use of the truck confirmed it was not to be used for personal use.
However, on Saturday morning about 9 a.m., Marshall and David left in the truck. According to David, they went to a friend's house for a while, then to a fruit stand on Perkins Road in Baton Rouge. Marshall did not mention the visit to a friend, but said they went to a drug store and then to the fruit stand. Both admitted they were not working at that time and they knew they did not have permission to use the truck. About 3 p.m., with Marshall driving, they were returning from the fruit stand along Bluebonnet Boulevard, intending to return home by way of I-10 West. Marshall pulled into the left turn lane, saw he had a green light, and began a left turn to get on the entrance ramp of the interstate. However, the green arrow, signifying a protected left turn, was not on, and the light was green in both directions.
As the truck turned, it was hit on the passenger side by an oncoming vehicle driven by Jennifer Aycock ("Miss Aycock") in the outside lane. Her view of the turning truck was blocked by a minivan alongside her in the inside lane. The minivan braked just in time to avoid the collision, but Miss Aycock could not avoid hitting the truck. In connection with the accident investigation, police conducted a breathalyzer test on Marshall. His blood alcohol level was .33 and he was ticketed for driving while intoxicated.[2]
Miss Aycock sued Marshall, Jenkins, and its insurer, Audubon Indemnity Company ("Audubon"). David also sued Marshall, Jenkins, and Audubon, and the cases were consolidated. After a trial, the judge found Marshall was 100% at fault in causing the accident. He dismissed Jenkins and Audubon and awarded David $6,328.50 against Marshall, consisting of his actual medical expenses and $4,000.00 in general damages.[3]
David appeals the amount of the general damages as abusively low. He also contends Jenkins should be vicariously liable as Marshall's employer and Audubon should provide coverage under the omnibus clause of the business automobile liability policy, as well as the medical payments provision. He also claims penalties should be assessed for Audubon's failure to pay his medical expenses. Finally, he urges the trial court erred in failing to award exemplary damages against Marshall, who was intoxicated at the time of the accident.

STANDARD OF REVIEW
The appellate court's review of factual findings is governed by the manifest error/clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable, evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

ANALYSIS

Liability of Jenkins
David contends that the trial court erred in dismissing his claims against Jenkins. He claims Jenkins should be found vicariously liable for Marshall's negligence under the *121 theory of "respondeat superior." He argues that Marshall took the truck home at his employer's request so the truck would not have to be parked outside the locked gate over the weekend. Therefore, he was performing an act in furtherance of his employment, and Jenkins should be liable.
Vicarious liability is based on Article 2320 of the Louisiana Civil Code, which states, in part, that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Under this article, an employer can be held liable for an employee's tortious conduct only if the employee is acting within the course and scope of his employment. Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226. The jurisprudence has identified four factors to consider in making a vicarious liability determination, including whether the tortious act: (1) was primarily employment rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during work hours; and (4) occurred on the employer's premises. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974); Emoakemeh v. Southern University, 94-1194 (La.App. 1st Cir. 4/7/95), 654 So.2d 474, 476.
The accident in this case did not occur during working hours or at Jenkins' premises. Additionally, the record establishes unequivocally that David and Marshall were not working and were not doing anything to further their employer's interests when this accident happened. Although taking the vehicle home and parking it there might have furthered the interests of their employer by keeping the truck safe, driving it without permission on a purely personal errand while intoxicated could not possibly have effectuated that goal. Accordingly, contrary to David's arguments, there was no basis for imposing liability on Marshall's employer, and the trial court correctly dismissed David's claims against Jenkins.

Audubon's Liability Coverage
David urges this court to find insurance coverage under the omnibus clause of the Audubon business automobile liability policy covering the Jenkins truck. Under that clause, coverage was provided for anyone using a covered vehicle with the permission of the insured. David contends that, because Marshall had initial permission to use the truck on Friday afternoon and to take it home, he should be covered, even though his use of the truck at the time of the accident was a deviation from the scope of the permission.
The leading case discussing the circumstances under which the omnibus clause of an insurance policy may provide coverage to a person, other than the insured, using a covered vehicle with the insured's permission, is Norton v. Lewis, 623 So.2d 874 (La.1993). In that case, an automobile dealer's off-duty employee caused a head-on collision while running personal errands in the dealer's car. The trial court found the employee was not in the course and scope of his employment when the accident occurred and did not have express or special permission to use the vehicle for personal errands prior to the accident. Norton, 623 So.2d at 874-75. The supreme court affirmed, stating "the presumption of continued permission that normally flows from initial permission was not available because of the plaintiffs' failure to prove initial permission in this case." Norton, 623 So.2d at 875.
In Norton, the court recognized the historically broad construction of the word "permission," beginning with the case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938), stating:
Once permission, whether express or implied, to use a motor vehicle is established it is given a wide and liberal meaning in determining coverage. So long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured; coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle.
Norton, 623 So.2d at 875 (citations omitted). The fact of initial use with permission must *122 be established, as any fact, by a preponderance of the evidence. Norton, 623 So.2d at 876.
In our case, the trial judge stated in oral reasons for judgment that neither Marshall nor David were credible in stating they believed they could use the Jenkins truck on Saturday for personal use. He found the truth was that they did not have permission to use the vehicle on Saturday for personal use, and that Marshall knew he was not to get back in the truck until he returned to work. The judge stated:
The policy of Audubon that covers the insured is only applicable certainly for those who have permission. I do not think that we are involved in a question of deviation [;] I think we are involved in the question of where Marshall Courtney was told when he got home, back to the shop, take the vehicle home if the gate is locked, ground it and don't get back in it until he comes to work.
Our review of the record fully supports this factual finding. Jenkins' Vice-President, Glen Jenkins, testified the gate was to be left unlocked and if employees returned with a truck after everyone had left the work site, they were to put the truck inside the gate, lock the padlock, and put the truck keys in his mail slot. He said the truck should not have been taken home in this instance, but admitted Lionel had primary responsibility for the daily use of the vehicles. Lionel testified there were no written policies concerning use of company vehicles, but he was in charge of determining who could use a truck and how it was to be used. He stated he had been a Jenkins employee for 30 years and while he was foreman, his policy had always been clear:
After hours, the gate was locked, they was to take the truck home and leave it parked. If it was Monday, they take it home and bring it back the next day. If it was the weekend, they take it home, park the truck, and bring it back Monday.... No one had personal use of the vehicle other than work.... No one used the truck they knew they couldn't use the truck for personal use, just for company only.
Marshall said he understood if he returned with a truck after working hours and the gate was locked, he was supposed to take the truck home and return it the next day. He said he had never used the truck for a personal errand except the day of the wreck and knew he did not have anyone's permission to use a company vehicle for personal use. When asked whether he felt he could use the truck for personal use if he wanted to, Marshall responded, "No. I just took a chance that day." He admitted the policy was that if he took the truck home on Friday, he was to park it and bring it back on Monday morning, and reiterated, "I knew I wasn't supposed to use it."
From our review of the record, we conclude there is no question that when this accident occurred, Marshall and David did not have permission to use their employer's truck. They were authorized to use it to carry out their employment duties on Friday and, because the gate was locked, they had permission to take the truck home and park it. There is no evidence in this record to suggest they had permission to use the truck on Saturday for personal errands. We agree with the trial judge's conclusion that the facts of this case do not demonstrate a mere "deviation" from permitted use. The permission to use the vehicle ended Friday evening when Marshall and David arrived home. Accordingly, we find no manifest error in the trial judge's decision that the Audubon policy did not provide liability coverage in this instance.

Audubon's Medical Payments Coverage
David contends the trial judge erred in dismissing his claims against Audubon for payment of his medical expenses under the medical payments coverage provisions of the policy. The medical payments coverage endorsement in the Audubon policy covering the Jenkins truck states that the insurer will pay reasonable expenses incurred for necessary medical services to an insured who sustains bodily injury caused by an accident. Anyone occupying a covered auto is included in the definition of an insured for purposes of this coverage. The policy provides that medical expenses will be paid up to $5,000.00 per *123 person. David claims this endorsement requires payment of his medical expenses, without regard to the circumstances of the accident, and that Audubon's failure to pay entitles him to certain statutory penalties.
Generally, we would agree that the long-standing policy in Louisiana is that medical payments coverage is in the nature of "no-fault" insurance, the purpose of which is to pay the medical expenses of anyone injured as a result of an accident while occupying an insured vehicle, regardless of whose fault caused the accident. See Sims v. National Cas. Co., 43 So.2d 26 (La.App. 1st Cir.1949). However, there is a specific exclusion in the Audubon policy endorsement which excludes coverage for bodily injury to anyone using a vehicle without a reasonable belief that the person is entitled to do so. Although David equivocated at trial about whether he thought he and Marshall had permission to use the company truck for personal errands on Saturday, their brother and supervisor, Lionel, said they both knew about the company policy, and the trial judge concluded they knew they did not have such permission.
In dismissing David's claim for medical payments coverage, the trial judge stated he did not believe Audubon had to make those payments if there was no liability under the policy. This statement is incorrect as a matter of law, and would require a reversal on this claim, were it not for the exclusion clause in this particular policy. Given the judge's finding that David and Marshall were not entitled to use the vehicle, and our review of the record, which overwhelmingly supports his conclusion that they knew the vehicle should have been parked and knew they were not authorized to use it for personal errands, we conclude the exclusion precludes medical payments coverage for David's injuries. Since there was no obligation to make those payments, there could not be any statutory penalties for failure to pay.

General Damages
David contends that the trial court's award of $4,000.00 in general damages was abusively low. General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La. 1992). In the assessment of such damages, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. Before a court of appeal can disturb a damage award made by a trier of fact, the record must clearly reveal that the trier of fact abused its much discretion in making the award. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991). An appellate court should only disturb an award of general damages when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
We have reviewed the entire record to determine whether the trial judge abused his discretion in awarding only $4,000.00 to David for general damages. The record shows the truck in which David was riding was hit on the passenger side. Immediately following the collision, David was shook up and unsteady. Although he was able to get out of the truck on the driver's side, he lay on the ground until an ambulance transported him to the hospital. There he was x-rayed and released with pain medication.
His treating physician, Dr. Robert J. Hall, testified that he first saw David on December 14, 1992, and diagnosed David's condition as lumbar sprain and strained ligaments of the hip girdle. David received diathermy treatments over a period of time.[4] In a letter to David's attorney, Dr. Hall stated he last evaluated *124 David on May 28, 1993. At that time, David was not experiencing any discomfort, had a full range of motion, and was discharged from Dr. Hall's care. However, Dr. Hall stated he "did an addendum" to that report. An MRI in January 1994 showed diffuse annular disk bulges at the L3/L4 and L4/L5 levels, causing some minimal flattening of the anterior thecal sac. Dr. Hall interpreted this as two herniated discs, but admitted he did not distinguish between a bulge and a herniation because "the bulge will eventually become a herniated disk." He stated the bulging was not causing "pinched nerves" at that time.
David testified he only saw Dr. Hall a couple of times. By the time of trial, he did not have trouble sleeping or walking and stated his back really did not bother him any more, although he still had "just a pain that's there." He had gotten a back support strap to protect his back, and had gone back to a job that involved lifting, carrying, and setting marble. David said every now and then, if his back bothered him, he took some Tylenol to ease the pain.
Dr. Hall's testimony was inconclusive and his records were obviously inaccurate, so it is difficult to ascertain how long David was in his care. The initial diagnosis was muscle sprain and, although the MRI later showed bulging discs, David said he was not experiencing any significant discomfort and was able to perform heavy work activities. There was no testimony to indicate David ever had any severe pain or disability as a result of the accident. Based on the entire record, and primarily David's own assessment of his condition, we cannot say the trial court judge abused his much discretion in making this award.

Exemplary Damages
David contends the trial court erred in failing to award exemplary damages against Marshall, because he was driving while intoxicated when the accident occurred. Under Article 2315.4 of the Louisiana Civil Code, exemplary damages may be awarded in addition to general and special damages when the injuries were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
The decision to award exemplary damages under this statute rests within the sound discretion of the trier of fact. Khaled v. Windham, 94-2171 (La.App. 1st Cir. 6/23/95), 657 So.2d 672, 681, writs dismissed, 95-1914, 95-1937 (La.11/1/95), 661 So.2d 1369. The purpose of such an award is to penalize, and thus deter, drunk drivers, and also to award additional damages for their innocent victims. Khaled, 657 So.2d at 681.
It is clear from the results of the blood alcohol test that Marshall was intoxicated and should not have been operating a motor vehicle. However, the evidence is not so clear concerning whether his actions were the result of a reckless and wanton disregard for the safety of others. Despite his elevated blood alcohol level, Marshall and David both testified they had not been drinking any alcohol on the day of the accident. Marshall admitted they were drinking beer and hard liquor for several hours Friday evening, but stated he went to bed about midnight and had nothing further to drink before the accident occurred. This was not a situation in which a person stumbled out of a bar and got behind the wheel of an automobile. Nor was David a totally innocent victim; he and Marshall lived together and had been drinking together the night before the accident. David knew when and how much his twin brother had been drinking and was in a position to assess his condition on the day of the accident. Under these circumstances, the trial judge did not abuse his discretion in refusing to award exemplary damages to David.

CONCLUSION
Considering the foregoing, we find no merit in any of the assignments of error, and the trial court's judgment is affirmed. All costs *125 of this appeal are to be borne by David Courtney.[5]
AFFIRMED.
NOTES
[1] Judge Ralph E. Tyson of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although Marshall claimed he had not been drinking on Saturday before the accident, he admitted drinking heavily the previous evening.
[3] The judgment also awarded damages to Miss Aycock, her father, Adrian Aycock, who owned the car she was driving, and his insurer, State Farm Mutual Automobile Insurance Company. This award was not appealed.
[4] Dr. Hall's records were totally inconsistent. Two sets of treatment records were introduced; one shows diathermy treatments through May 28, 1993, when David was released; the other shows diathermy treatments continuing through February 2, 1994. Yet both showed $1,740 was the total cost for those treatments and Dr. Hall's services.
[5] Although Audubon requested, in briefs, an award of damages against David for bringing a frivolous appeal, it did not answer the appeal and ask for this relief. An appellee who desires damages against the appellant must timely file an answer to the appeal, stating the relief demanded. LSA-C.C.P. art. 2133. Failing that, Audubon's request for damages is not properly before the court and will not be considered.