849 So.2d 690 (2003)
Tommy and Kimberly DOMINGUE and on Behalf of Their Minor Children Jordan and Jake DOMINGUE
v.
ALLIED DISCOUNT TIRE AND BRAKE, INC. and Dan Jones.
No. 2002 CA 1338.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*693 S. Alfred Adams, Baton Rouge, Counsel for Plaintiffs/Appellees Tommy and Kimberly Domingue and on behalf of their minor children Jordan and Jake Domingue.
Dan E. West, Baton Rouge, Margaret Diamond, New Orleans, Counsel for Defendants/Appellants Allied Discount Tire and Brake, Inc. and Dan Jones.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Allied Discount Tire and Brake, Inc. (Allied) and Dan Jones (Jones), an employee of Allied, appeal a judgment finding Dan Jones at fault for an intentional tort committed against Tommy Domingue (Domingue), another employee at Allied. Following a review of the facts and pertinent law, this court affirms the judgment of the trial court.

BACKGROUND
On February 8, 1996, Dan Jones (Jones), the district manager of Allied, was on the premises of one of Allied's stores to investigate a complaint. Domingue was employed as the service manager at the store. The initial purpose of Jones's visit to the Airline Highway Allied store is disputed.[1] It is, however, uncontested that as a result of Jones's review of complaints of payroll deficiencies by employees at the Airline Highway store, Domingue tendered his resignation, and the two men engaged in a physical fight.
The trial court adjudged Jones, and thereby Allied as his employer, one hundred percent liable in solido. General damages in the sum of $100,000.00 were awarded to Domingue. Domingue was also granted $82,034.20 in lost wages, $11,446.63 in past medical expenses, and $5,671.40 in future medical expenses.
Allied and Jones allege as error: the court's finding of an intentional tort; the allocation of one hundred percent fault to Jones; causation of plaintiff's back pains, headaches, and temporomandibular joint dysfunction by the physical altercation; and the amount of general and special damages. Domingue answered the appeal, seeking an increase in the sum awarded for loss of wages.

LAW
Intentional Tort
Jones contends on appeal that the evidence does not demonstrate that he had any intent to harm Domingue. An *694 intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to bring about a result which will involve the interests of another in a way that the law forbids. See Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). When there occurs an intentional tort of battery by one employee against another employee, the exclusivity provisions of the Louisiana Workers' Compensation Act do not preclude the plaintiff's coextensive right to pursue a tort suit against the employer. See La. R.S. 23:1032 B; Quebedeaux v. Dow Chemical Company, 2001-2297, p. 4 (La.6/21/02), 820 So.2d 542, 545. In order to attribute the element of "intent," within the context of La. R.S. 23:1032 B, the employer or other person identified in the act must either (1) consciously desire the physical result of his act, whatever the likelihood of the result happening from his conduct, or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.[2]Reeves v. Structural Preservation Systems, 98-1795, p. 6 (La.3/12/99), 731 So.2d 208, 211. Gauging which party was the aggressor or whether excessive force was used in repelling an attack is a question of fact dependent on the particular facts and circumstances of each case. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563, 564-565 (1969).
Domingue testified that Jones slung a coffee cup at him and then struck him in the eye; whereupon, Domingue went back up against a desk. This version of events was corroborated by Donald R. Dunbar, Jr., a witness, who was a tire technician at Allied at the same time that Domingue worked there. Contrarily, Jones stated that Domingue tried to hit him with the phone receiver, that Jones "threw [his] hands up to block the receiver[,]" and that he only hit Domingue in self-defense. In oral reasons for judgment, the trial court judge made the credibility determination that "Mr. Jones was the initial aggressor and his action was clearly intentional." Moreover, the judge found that "Mr. Domingue did not provoke or initiate the punch which was thrown by Mr. Jones."
When reviewing credibility determinations of fact, this court's role is limited to ascertaining whether the fact finder's conclusion was a reasonable one, not whether the trier of fact was right or wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). We do not ascribe to the record any evidence that Domingue's story was so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). In the absence of such a situation in the instant case, the trial court's determination that an intentional tort was committed by Jones is not manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 845.
Percentage of Fault
Implicit in the trial court's pronouncement that Jones intentionally initiated the fight and Allied should be cast one hundred percent liable for the acts of its employee, was the court's exoneration of Domingue from fault. Prior to the trial of this matter, the court granted an "exception of res judicata on the issue of aggression as to defendant Allied ... but not as to defendant, Dan Jones individually." The trial court's finding was premised *695 on a prior workers' compensation judge's determination that Domingue was not the initial aggressor.
The principles of res judicata are established in La. R.S. 13:4231. That statute states, in relevant part, that a final judgment is conclusive between the same parties when various conditions are met. Patin v. Patin, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/22/01), 808 So.2d 673, 676. The record in the case at hand contains an excerpt from the workers' compensation hearing involving Domingue. Therein, the workers' compensation judge factually found that Domingue was not the initial aggressor. A factual conclusion issued from the bench falls short of a judgment of the court within the parameters of the application of the res judicata doctrine pursuant to La. R.S. 13:4231. Moreover, the procedural requisites and burdens of proof associated with a workers' compensation claim are divergent from the requisites of a tort case; therefore, a factual determination in one forum does not readily substitute for the evidentiary requirements of the other. The doctrine of res judicata is stricti juris and should be rejected when doubt exists as to whether a party's substantive rights have actually been previously addressed and finally resolved. Patin, XXXX-XXXX, p. 5, 808 So.2d at 676.
The trial court erred in applying the doctrine of res judicata to the instant case. The court, however, properly excluded Jones from its res judicata decision; therefore, any error in its application to Allied becomes substantively inconsequential on appeal due to the trial court's full review of the issue of aggression vis a vis Jones. It is important to note that following said consideration, the court reached a completely independent determination that Jones was the initial aggressor. Our review of the record does not disclose any manifest error in the trial court's determination that Jones was the aggressor.
When a person responds to an attack by using more force than is necessary to repel the aggression or apparent aggression, he is liable for injuries caused by the unnecessary force. Stewart v. Vidrine, 408 So.2d 413, 416 (La.App. 1st Cir. 1981). Factors considered by the courts in a calibration of the reasonableness of action by the party being attacked include: the character and reputation of the attacker, the belligerence of the aggressor, a large difference in size and strength between the parties, an overt act by the attacker, threats of serious bodily harm, and the impossibility of a peaceful retreat. Slayton v. McDonald, 29,257, p. 6 (La.App. 2 Cir. 2/26/97), 690 So.2d 914, 918; Levesque v. Saba, 402 So.2d 266, 270 (La.App. 4th Cir.1981). Domingue stated in court that he "came back swinging" in response to Jones's provocative attack. It is not disputed that Jones was substantially larger than Domingue, and there was no evidence that Domingue's attempts inflicted injury on Jones. Thus, the trial court's implied conclusion that Domingue's actions were reasonable under the circumstances and its allocation of one hundred percent fault to Allied is not manifestly erroneous. See Rosell, 549 So.2d at 844.
Causation and Damages
Allied and Jones challenge the award of damages for Domingue's back pain, persistent headaches, temporomandibular joint syndrome (TMJ), and the extraction of all of Domingue's teeth as part of the associated treatment.
Dr. Timothy R. Raborn, a general dentist, first treated Domingue for TMJ on February 16, 1996. He testified that, due to the bad condition of Domingue's teeth, he was unable to initiate splint therapy without first extracting all of Domingue's *696 teeth. Domingue was not financially able to undergo the extraction until February 23, 1999; therefore, Dr. Raborn placed him on prescriptions of Motrin, Lorcet, and valium for pain throughout the three intervening years. Following the extraction of his teeth and splint therapy in 1999, Domingue was, thereafter, referred by Dr. Raborn to Dr. Neil Smith, a neurologist. Dr. Smith successfully treated him for his persistent post-traumatic migraine symptoms, thereby ultimately alleviating the chronic headaches.
Given the failure of Dr. Raborn's treatment to fully alleviate Domingue's symptoms and Dr. Smith's subsequent success with Domingue's headaches, Allied contests Dr. Raborn's diagnosis and remedial treatment of TMJ following the altercation. The protracted length of time during which Domingue was placed on drugs that debilitated his capacity to work, the extraction of all of his teeth and placement of the splint, the referral to the neurologist when the splint treatment did not produce total alleviation, the subsequent success of a neurologist in relieving the headache symptoms, and the testimony by Dr. Donald Brown, an orthodontist, that there was not supportable evidence that the patient had demonstrable TMJ, do not collectively instill confidence in the dental remedy for Domingue's symptoms. However, Domingue stated that the splint successfully eliminated his jaw pain. The court further believed Domingue's testimony that he had never suffered jaw pain or incurred serious headaches before the injury. Moreover, Donald Dunbar and a former employer, William W. Thompson, stated that they had never heard Domingue complain about headaches or jaw or facial pain prior to the altercation. There is, therefore, no manifest error in the court's finding that the source of Domingue's symptoms of jaw pain and headaches and subsequent medical treatment by Dr. Raborn was the physical altercation between Domingue and Jones. Consideration of the medical appropriateness, or quality of the treatment, by a physician extends beyond the parameters of this cause of action. As such, this court does not find error in the trial court's inclusion of the cost of medical treatment by Dr. Raborn for TMJ.
Domingue testified that when he was hit, he fell back over the desk, injuring his low back. On February 26, 1996, he began treatment with Dr. J.D. Warren, a chiropractor, naturopath, nutritionist, and holistic health provider. Dr. Warren treated him through September 19, 1996, during which time Domingue exhibited symptoms of pain in the lumbar and cervical areas of the spine, limited range of motion, lack of tactile feeling in his hands, as well as headaches. On September 9, 1996, because Domingue's symptoms had not improved, he saw Dr. Thad S. Broussard, an orthopedist. Dr. Broussard noted no objective findings, just symptomatic complaints. An MRI test in 1997 revealed the congenital abnormality of a transitional vertebra at the L5 level, as well as bulge of the disc. Dr. Broussard opined that the bulge became symptomatic with the subject injury, which had produced a permanent back condition. Dr. Broussard stated that activities such as sitting long periods, overhead reaching, bending, lifting, twisting, mopping, and raking would result in pain and discomfort. Given this evidentiary support, the record does not display any manifest error in the trial court's finding of a causal relationship between the physical blow to Domingue and his subsequent lumbar back condition. See Rosell, 549 So.2d at 844.
We next address the relationship of Domingue's migraine headaches to the altercation. Dr. Neil Smith, a neurologist, *697 diagnosed the onset of vascular headaches following the incident as post-traumatic migraine symptom. The treatment of prescriptive medicine significantly ameliorated, but did not cure, the symptoms. Dr. Smith opined that Domingue would continue to experience, and need treatment for, migraine headaches from time to time. There was no countervailing evidence that Domingue had suffered migraine headache symptoms prior to the altercation with Jones; therefore, the court's imputation of a causal relationship is not clearly wrong.
Additionally, it is argued that some of Domingue's injuries are attributable to intervening causes. On June 2, 1997, Domingue was involved in an automobile accident. He testified that the physical symptoms resulting from the 1996 altercation were not exacerbated by the accident. Indeed, there is no evidence of an increase in pain levels in the introduced medical records. Additionally, on May 20, 1999, Domingue received a three to four inch cut on his head when he was hit with a pipe by his neighbor. Again, there does not exist evidence in the record on review that physical symptoms related to the altercation with Jones were worsened by this event.
This court, therefore, affirms the trial court's attribution of a causal connection between the February 1996 altercation and the low back symptoms, recurrent headaches, and TMJ dysfunction, as well as the monetary award for the costs of the ensuing medical treatment.
General Damages and Lost Wages
Allied and Jones assert that the general damages award of $100,000.00 and the lost wages award of $82,034.20 are excessive. The premise of this assignment of error rests in Allied and Jones's contention that, in addition to the lack of a connexity between the altercation and Domingue's symptoms, Domingue failed to take reasonable steps to mitigate his damages. Specifically, it is contended that Domingue's dependency on medication for a three-year interval, until he could afford Dr. Raborn's proposed treatment for his TMJ dysfunction, should not entitle him to lost wages and general damages because he did not attempt less debilitating medical treatment.
Domingue relied on the diagnosis and suggested treatment of Dr. Raborn. The trial court awarded him the full amount of his wage earnings at Allied prior to the functional capacity evaluation (FCE) that had been ordered by Dr. Broussard. However, for the time period following the results of the FCE prior to his return to employment, Domingue was only granted wage losses comprising the difference between his pay rate at Allied and the amount he could have earned by performing a light duty job for forty hours a week. Domingue asserts that he was not, in actuality, able to earn the sum indicated in the FCE because he had been placed on prescribed medication by Dr. Raborn.
Allied and Jones suggest that Domingue could have availed himself of less costly treatment at Louisiana's Charity Hospital. An injured party has a duty to exercise reasonable diligence and ordinary care to mitigate his or her own damages. See Barsavage v. State, Department of Transportation and Development, 96-0688, p. 12 (La.App. 1 Cir. 12/20/96), 686 So.2d 957, 963, writs denied, 97-0595 (La.4/18/97), 692 So.2d 455 and 97-0634 (La.4/18/97), 692 So.2d 456. However, expense of treatment has been recognized as a proper consideration in determining the reasonableness of a person's refusal to undergo treatment. Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843, 846 (La.1983). The tortfeasor has the burden of showing both the unreasonableness of *698 the victim's refusal of treatment and the resulting aggravation of the injury. Id. (citing Glazer v. Glazer, 278 F.Supp. 476 (D.C.La.1968)).
In the instant case, Domingue's failure to submit to treatment until three years later was solely due to his financial inability to pay for the recommended dental treatment. Allied and Jones adumbrate that Domingue should have had his teeth extracted three years earlier at Charity Hospital, which would have allowed him to return to work sooner than he did. However, there is no supportive evidence that the dental treatment was, in fact, offered at Charity; nor does the evidence reveal that Domingue could have received similar treatment at Charity. Thus, Allied and Jones have not met their burden to prove that Domingue failed to reasonably mitigate the damages.
In Domingue's answer to the appeal, he disputes the court's omission of the portion of wages that Domingue was deemed to be able to earn pursuant to the FCE. We do not find that the trial court erred in factoring in the period during which Domingue was on prescribed medication up to the time that the FCE was performed and Domingue and Dr. Smith were presented with objective results. Nor do we attribute error on the part of the trial court in its reliance on the FCE. The trial court award of lost wages in the sum of $82,034.20 is affirmed.
Finally, an award of general damages may not be articulated with any degree of pecuniary exactitude. Rather, general damages involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351, 352 (La.1974); Aycock v. Jenkins Tile Company, 96-2348, 96-2349, pp. 9-10 (La.App. 1 Cir. 11/7/97), 703 So.2d 117, 123, writ denied, 97-3056 (La.2/13/98), 709 So.2d 753. The trier of fact is, therefore, accorded discretion in the determination of the monetary amount to be given. La. C.C. art. 2324.1. In the instant case, the court awarded general damages in the sum of $100,000.00. Given Domingue's symptoms of pain affecting his head, neck, and back that were severe enough to require prescribed medication for years, the extraction of all of his teeth, and his inability to work or perform many other activities for an extended period of time, this court does not conclude that the award of general damages is beyond that which a reasonable trier of fact could assess for the effects of this particular injury. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 1059, 127 L.Ed.2d 379 (1994).

DECREE
In sum, this court affirms the judgment of the trial court. All costs associated with the appeal are assessed to Allied Discount Tire and Brake, Inc. and Dan Jones.
AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] Jones testified that he went to the Allied store to investigate complaints about Domingue's temperamental conduct, as well as complaints on behalf of employees of a payroll deficiency.
[2] Louisiana Revised Statute 23:1032 B states: "Nothing in [the Labor and Workers' Compensation Scope and Operation] Chapter shall affect the liability of the employer, or any ... employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act."