LOLLEY, J.
 

 | ,In this battery case, defendant, Michael Moore, appeals a judgment of the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, which found in favor of the plaintiff, Grant Lee Williams. For the following reasons, we affirm.
 

 FACTS
 

 On May 28, 2006, Williams and Moore were patronizing a bar, Saddle Ridge, formerly located on the Louisiana Boardwalk. Williams was there with a friend, Luis LeVargas, and his fiancée (now wife), Lisa Lobrano. At some point during the evening, Moore approached Lobrano at the bar and touched her inappropriately. Seeing this, Williams told Moore that Lobrano was his girlfriend and advised him to leave her alone. After a verbal exchange, Williams and Lobrano walked toward the exit. On the way out, Moore struck Williams in the face. The emergency medical team at the Louisiana Boardwalk were called to the scene and treated Williams. Lobrano eventually took Williams to the emergency room. As a result of the attack, Williams sustained multiple facial fractures including a broken nose and an orbital “blow-out.”
 

 After a bench trial, the trial court ultimately found that both Moore and Williams were equally at fault. Accordingly, the trial court reduced the total damage amount by half and awarded damages to
 
 *1216
 
 Williams totaling $35,450.66.
 
 [1]
 
 Moore now appeals.
 

 |2LAW and discussion
 

 An appellate court generally reviews the factual findings of a trial court according to the manifest error standard of review.
 
 Powell v. Regional Transit Authority,
 
 1996-0715 (La.06/18/97), 695 So.2d 1326. This standard applies equally in jury trials and judge trials.
 
 Id.
 
 When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.
 
 Id.
 
 Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Id.
 

 Tort liability is based on La. C.C. art. 2315, which states, “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Further, La. C.C. art. 2323 provides:
 

 A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of a fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to degree or percentage of
 
 negligence
 
 attributable to the person suffering the injury, death, or loss.
 

 |SB. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
 

 C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tort-feasor, his claim for recovery of damages shall not be reduced.
 

 The factors to be considered by the courts in determining the percentages of fault are the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages.
 
 Watson v. State Farm Fire and Cas. Ins. Co.,
 
 469 So.2d 967 (La.1985). In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct. In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense.
 
 Landry v. Bellanger,
 
 2002-1443 (La.05/20/03), 851 So.2d 943.
 

 Self-defense, unlike the aggressor doctrine, is a true defense in that it operates as a privilege to committing the intentional tort. In such a case, a plaintiffs conduct must have gone beyond mere
 
 *1217
 
 provocation under the aggressor doctrine. Under Louisiana jurisprudence, in order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant’s safety and the force employed cannot be excessive in degree or kind.
 
 Id.
 

 In this case, several people testified. According to Lisa Lobrano, while she was standing at the bar waiting for a drink, Moore walked by and 14skimmed the underside of her breasts with his hand. Lobrano testified that she told Moore to “leave her alone and that [she] had a boyfriend” and pointed to Williams who was walking up to her at that moment. Lobra-no told Williams that she wanted to leave. As they walked out of the bar, Lobrano described that what she saw next was Williams turning towards her and there was blood coming from his face. Lobrano testified that she did not see a bottle in Moore’s hand, and she did not see if Williams swung first. Lobrano further testified that Moore kicked Williams in the ribs after Williams went down.
 

 Williams testified that he saw Moore approach Lobrano and noticed Lobrano looked uncomfortable, so he proceeded to walk toward her. He admitted “pushing” or “bumping” Moore as he walked out. As he was leaving, Williams recalled seeing Moore from the corner of his eye and then was blindsided by Moore’s punches. He also related that he was kicked in the ribs.
 

 Moore, on the other hand, states that he did not touch Lobrano at all and merely apologized for “bum-rushing her” at the bar. Moore stated that Williams came up to him and at first shoved him, and then punched him in the eye. Moore explains that he started to swing, and “must have hit [Williams]” since he was “obviously hurt.”
 

 Other bystanders testified, but did not see the actual altercation. Michael DeSil-va and Holhe Parrie, both friends of Michael Moore and at the bar with him that night, testified they heard two “pops” but did not see who hit whom. Both did notice that Moore’s eye was noticeably red and | ^swollen. Robbie Graham, Moore’s best friend, witnessed the incident and stated that “[Williams] asked [Moore] why was he talking to his girlfriend.... And immediately pushed him in the chest real hard.” Graham further testified that “[Williams] hit [Moore] in his eye. And it went from there.” Graham did not believe that Moore had anything in his hands when he started to “defend himself.” He also did not see Moore kick Williams after he went down.
 

 Aaron Meyers, the EMT who treated Williams on the scene, testified that he recalled being called out that night to the scene a little after midnight. He also recalled seeing Williams with a swollen right eye and a large laceration beneath his eye. According to Meyer, he cleaned off blood and small glass-looking particles from the area around his eye and thought that Williams possibly had a fractured nose.
 

 Here, the trial court did not determine who swung first; however, it did find that Moore and Williams were equally at fault. We agree. Whether only using his fists or with a glass object, it is undisputed that Moore hurt Williams. Williams did not deny initiating contact with a “bump.” Moore tries to argue that he was not the aggressor and therefore not liable for the damages resulting from the fistfight. We find this argument to be unpersuasive. Furthermore, Moore raises self-defense as an affirmative defense; however, this was not raised at the trial court. Despite the fact that Williams’ injuries were far greater than Moore’s injuries, suggesting that he used excessive force to repel the aggression, we need not inquire into the self-defense claim nor who was the initial aggressor.
 
 See Landry, supra.
 
 16Clearly, as
 
 *1218
 
 the trial court pointed out, if only different choices were made by both parties during the heat of the moment, the altercation could have been avoided. As such, we find that both parties were equally at fault.
 

 The record provides that the past and future medicals totaled $30,901.31. The trial court did not err in its award for general damages which it ascertained was $40,000.00. The trial court accurately reduced the total amount to reflect the fault allocation. Considering the life changing physical and emotional injuries Williams suffered that occurred in the blink of an eye, we cannot find the trial court’s award to be manifestly erroneous.
 

 CONCLUSION
 

 After a review of the record, we affirm the trial court’s findings in its entirety. All costs are to be borne by the defendant, Michael J. Moore.
 

 AFFIRMED.
 

 [1]
 

 . The court assessed $30,901.31 for past and future medical expenses and $40,000.00 for general damages. This total was reduced by 50%.