JUSTIN IRWIN          *       NO. 2023-CA-0475

VERSUS             *

                             **COURT OF APPEAL**

JOHN BRADLEY BRENT    *

                             **FOURTH CIRCUIT**

            *

                             **STATE OF LOUISIANA**

           * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01237, DIVISION "F-14"
Honorable Jennifer M. Medley
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

*CHASE, J., CONCURS IN THE RESULT*

Michael William Tifft
LAW OFFICE OF MICHAEL W. TIFFT
710 Carondelet Street
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT


Prescott Lee Barfield
1558 N Prieur Street
New Orleans, LA 70116

      COUNSEL FOR DEFENDANT/APPELLEE


                             **REVERSED AND RENDERED**

                             **JULY 19, 2024**

*JCL*

*DNA*

This is a comparative fault intentional tort battery claim. Plaintiff/appellant, Justin Irwin ("Plaintiff"), seeks review of the district court's May 11, 2023 judgment finding no liability on the part of Defendant/appellee, John Bradley Brent ("Defendant"), and dismissing Plaintiff's claims against Defendant with prejudice.

For the reasons that follow, we reverse the district court judgment. We find that Defendant is liable for the battery committed on Plaintiff; however, we find Plaintiff is forty percent (40%) at fault. Additionally, we find Plaintiff's general damages total $55,000.00. Accordingly, we award Plaintiff the amount of $35,000.00 plus judicial interest from the date of judicial demand.

## FACTS AND PROCEDURAL HISTORY

In April 2017, Plaintiff entered into a lease for an apartment owned by Defendant. Defendant and Plaintiff were longtime friends and never had a similar violent encounter. During the week of January 15, 2018, a hard freeze struck New Orleans, and the pipes under Plaintiff's apartment froze, causing the pipes to burst. Defendant failed to timely repair the pipes and prohibited Plaintiff from doing so.

1

On January 29, 2018, Plaintiff hired a licensed plumber to repair the pipes. On the same day, Defendant and a friend arrived at the apartment to repair the pipes while Plaintiff was out of the apartment. Upon Plaintiff's return, an altercation ensued between Plaintiff and Defendant over the repair of the pipes. Plaintiff pushed Defendant aside and, in response, Defendant forcibly punched Plaintiff in the face causing Plaintiff to suffer a concussion with a loss of consciousness, a lip laceration, closed fracture of the nasal bone, maxillary fracture, and whiplash to his neck. Defendant did not sustain any injuries and drove Plaintiff to the emergency room. Plaintiff received medical treatment for his injuries over the course of twenty-two months and suffered numbness, headaches, neck pain, sleep disruption, and vision problems.

Plaintiff filed suit against Defendant, alleging that Defendant committed a battery against him, which resulted in serious injuries and medical expenses. Defendant answered the petition and argued that Plaintiff was barred from recovering any damages, as Defendant enjoys La. R.S. 9:2800.19 civil immunity because he used "reasonable and apparently necessary . . . force or violence for the purpose of preventing a forcible offense against [his] person . . . ." La. R.S. 9:2800.19.[1]

_____

[1] Defendant also filed a reconventional demand seeking unpaid rent and alleging that he incurred time and money to rectify the deficient repairs made by Plaintiff's plumber. He alleged that Plaintiff was the aggressor but did not allege a battery claim or allege personal injuries. At the conclusion of the first trial, after the district court stated it was inclined to grant Defendant's motion for directed verdict, the judge asked, "Where are we on this reconventional demand?" After speaking to his client, Defendant's attorney stated that if the court were to grant the directed verdict motion, Defendant would be willing to "waive his claim" and "go home." Once Defendant realized Plaintiff was filing a motion for new trial, Defendant filed a motion to reinstate reconventional demand, which the district court denied. Defendant presented no evidence at the second trial of personal injuries sustained by him. In its judgment with reasons issued after the second trial, the court dismissed Defendant's "reconventional demand for unpaid rent." Defendant does not raise as an issue in his appellate brief the propriety of the district court's dismissal of the reconventional demand.

The matter proceeded to trial on May 24, 2021. At the close of Plaintiff's case-in-chief, Defendant moved for an involuntary dismissal arguing that Plaintiff failed to establish a *prima facie* case for the intentional tort of battery because Plaintiff was the initial aggressor and consented to the battery. The district court granted the motion. An appeal followed.

On appeal, this Court reversed the judgment granting Defendant's motion to dismiss and remanded the matter for further proceedings. *Irwin v. Brent*, 22-0063 (La. App. 4 Cir. 9/14/22), 348 So.3d 835. The Court held that Plaintiff carried his burden of proving the *prima facie* elements of battery finding that "it does not 'reasonably appear' that [Plaintiff] impliedly consented to continue the altercation by pushing [Defendant] aside and turning away to escape into his apartment." *Id.*, 22-0063, p. 5, 348 So.3d at 839. The Court remanded the matter to the district court to accept further evidence allowing Defendant to "present evidence to establish that he is without fault because his actions were justified. . . ." and if Defendant "does not prevail in proving a complete justification for his actions, the trial court may consider any provocative conduct on the part of [Plaintiff] in allocating fault." *Id.* (citing *Landry v. Bellanger*, 02-1443, pp. 15-16 (La. 5/20/03), 851 So.2d 943, 954-55). The Court explained:

> The testimony produced in [Plaintiff's] case-in-chief establishes that a battery occurred. However, whether the amount of force exerted by [Defendant] was reasonable and necessary can only be determined by considering further testimony. The facts adduced at trial establish that [Plaintiff] pushed [Defendant]; however, whether [Defendant's] actions were in self-defense or reasonable to bar civil recovery under La. R.S. 9:2800.19 requires additional testimony. The trial court granted the motion for involuntary dismissal without considering additional testimony. Accordingly, we find the trial court prematurely dismissed the case.

*Id.*

The case was tried on remand on January 24, 2023. Prior to trial, the parties stipulated to the admission of all exhibits entered at the previous trial and to the admission of the testimony of the fact witnesses presented at the previous trial. The parties, themselves, testified at the second trial. At the conclusion of the trial, the district court took the matter under advisement.

The district court issued a judgment with written reasons on May 11, 2023. The court again dismissed Plaintiff's claims against Defendant with prejudice finding that Plaintiff failed to establish a *prima facie* case for the intentional tort of battery because "Plaintiff consented to the battery committed by Defendant." The court also found that "Plaintiff pushing Defendant in a forceful manner was sufficient, under reasonable appearances, to provoke the physical retaliation distributed by Defendant" and that the force used by Defendant in response was reasonable. This appeal followed.

**STANDARD OF REVIEW**

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989), the Louisiana Supreme Court discussed the well-settled rule that an appellate court may only set aside a factual finding of a trial court where the finding is based on a "manifest error" or is "clearly wrong." Where there is conflict in the testimony, a trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. *Id.* Thus, where there are two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* Further, if a trial court has based its findings of fact on a determination regarding the credibility of the witnesses, the manifest error standard of review requires great deference to the findings of the trier of fact, due to the fact finder's

4

unique position to discern variations in the witnesses' demeanor and tone of voice. *Id.*

The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *See generally Cosse v. Allen-Bradley Co.*, 601 So.2d 1349, 1351 (La. 1992); *Housley v. Cerise*, 579 So.2d 973, 976 (La. 1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La. 1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell*, 549 So.2d at 844 (citing *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La. 1978)).

However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844-45.

When legal error interdicts the fact-finding process, the manifest error standard no longer applies to any findings affected by that legal error. If the record is otherwise complete, the reviewing court should conduct a *de novo* review of the interdicted findings. *Landry*, 02-1443, p. 15, 851 So.2d at 954 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252, p. 7 (La. 2/20/95), 650 So.2d 742, 747). Moreover, if the finder of fact does not reach an issue because of an earlier finding that disposes of the case, the appellate court, in reversing the earlier finding, must make a *de novo* determination of undecided issues from the facts presented in the record. *LeBlanc v. Stevenson*, 00-0157, p. 6 (La. 10/17/00), 770 So.2d 766, 771-72.

Upon determining that a *de novo* review is required, the appellate court is authorized to render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. "Courts of appeal may award damages when the trial court initially rejects plaintiff's demands and where the record contains sufficient proof of damages." *Broussard v. Med. Protective Co.*, 06-331, p. 5 (La. App. 3 Cir. 2/21/07), 952 So.2d 813, 818. When the initial award of damages is made at the appellate level, the award should reflect an amount, which is just compensation for the damages revealed by the record. *Id.*; *In re Brown*, 11-1824, p. 5 (La. App. 4 Cir. 2/20/13), 156 So.3d 661, 665.

Plaintiff's pertinent assignments of error challenge the district court's holdings regarding "consent" and "justifiable battery."  In its dual holdings, the district court found that Plaintiff was barred from recovery because: (1) Defendant did not commit a battery as Plaintiff consented to Defendant's violent conduct, thus failing to prove a *prima facie* case of battery; and (2) Defendant committed a battery upon Plaintiff but it was deemed justified on the grounds that Defendant's violent response was reasonable, thus granting him civil immunity under La. R.S. 9:2800.19 ("Section 9:2800.19 Immunity"). The district court found that the provocative nature of Plaintiff's push not only established "consent," but it also deemed Defendant's violent response a "justifiable battery."[2]

---

[2] The district court set forth these holdings in a single document entitled "judgment with reasons." Under La. C.C.P. art. 1918(B), "[w]hen written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment." "[R]easons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed. . . ." *Wooley v. Lucksinger*, 09-0571, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572. While a court of appeal is entitled to use reasons for judgment "to gain insight into the district court's judgment" – to the extent such "reasons may, or may not, have been helpful in that regard" – "the job of the appellate court [is] to review the district court's judgment, not its reasons for judgment." *Id.*, 09-0571, p. 78, 61 So.3d at 572.

6

We find that the district court's dual findings on "consent" and "justifiable battery" are inherently contradictory and demonstrate a conflation of legal analyses and misapplication of the law, particularly in light of the precedent set by the *Landry* case.[3] *Landry* emphasized the necessity of a comparative fault analysis rather than an absolute bar on recovery under the traditional aggressor doctrine. *Id.*, 02-1443, p. 18, 851 So.2d at 956. In *Landry*, the Court clarified that while a plaintiff's provocative behavior might influence the fault allocation, it does not automatically exonerate the defendant from liability. *Id.*, 02-1443, p. 16, 851 So.2d

---

[3] In *Lombard v. Nobre*, 23-0746, p. 11 n. 6 (La. App. 4 Cir. 6/18/24), --- So.3d ----, ---, 2024 WL 3041365, at *5 (internal references omitted), we explained:

> In intentional tort battery cases, the application of the laws of consent, self-defense, and comparative fault are interrelated and often improperly conflated. Due to their overlapping nature, particularly since the case of *Landry*, a discussion of each legal concept should be separate and in a specific order as follows: first, determine if "consent" was given by the plaintiff to establish whether a battery occurred[]; second, evaluate if self-defense applies to grant immunity from liability to the defendant under La. R.S. 9:2800.19[]; and third, assess fault to the plaintiff, if any, to allocate responsibility proportionally between the parties[]. If the defendant is found to have committed a battery and used excessive retaliation, a comparative fault analysis then tests the degree of the plaintiff's provocation but cannot bar the plaintiff's recovery. Comparative fault assesses proportional responsibility rather than absolutely bar recovery in these cases. Only the plaintiff's consent to the battery or the defendant's justified self-defense can completely bar the plaintiff from recovery, as these are complete defenses that negate the wrongfulness of the defendant's conduct. "[T]he full defenses of consent and privilege [are] intact. In this way the comparative fault principles will be confined to the job they were designed to do—taking victim fault into account." *Landry*, 02-1443, p. 11, 851 So.2d at 952 (citing [David] Robertson, *Louisiana's Law of Comparative Fault: A Decade of Progress,* [1 Louisiana Practice Series 5,] at 7). Thus, pursuant to *Landry*, even if the plaintiff is found to have initially provoked the incident, damages can still be recovered, though the amount may be reduced based on the degree of fault. Moreover, the plaintiff can be found to be zero percent at fault if the initial actions by the plaintiff are reasonable and not provocative under a totality of the circumstances comparative fault analysis. *See, e.g., Dowden v. Cutright*, unpub., 13-747 (La. App. 3 Cir. 12/11/13), 2013 WL 6536287 (where the plaintiff was found not to be at fault). By analyzing these issues sequentially and logically, the legal process ensures clarity and proper adjudication by the district court.

7

at 955. "[A]ny provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact." *Id.* This marked a departure from the previous doctrine where a plaintiff's initial aggressive action would categorically preclude recovery. The *Landry* case explained that when the defendant does not enjoy any qualifying privilege or immunity, the courts must perform a comparative fault analysis.

The district court's decision that completely barred Plaintiff's recovery and failed to conduct a comparative fault analysis[4] runs contrary to the directives established in *Landry*, leading to substantial legal and factual errors necessitating a reversal and *de novo* review. The incorrect overlapping of legal analyses by the district court resulted in a legal error that significantly impacted the fact-finding process. The district court committed a legal error in its application of "consent" and in its finding that Plaintiff did not establish a *prima facie* case of battery because he consented to Defendant's violent response. We also find error in the

---

[4] The district court's judgment improperly allocates fault to the parties as follows:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**
> that Judgment be entered in favor of Defendant, John [Brent], and against Plaintiff, Justin Irwin, in which Plaintiff, Justin Irwin, is allocated **ONE-[]HUNDRED (100) PERCENT** fault and Defendant, John Brent, is allocated **ZERO (0) PERCENT** fault for the battery committed by Defendant, John Brent.

This portion of the judgment aligns with a finding of no liability on the part of Defendant under a "justifiable battery" defense rather than a proper comparative fault assessment under La. C.C. art. 2323 and the *Watson* factors. *See Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 974 (La. 1985). The *Landry* court noted that "nothing prevents a trier of fact from determining that the plaintiff's conduct was of such a provocative nature as to render it the sole cause of his injury." *Landry*, 02-1443, p. 16, 851 So.2d at 955. The district court found that the provocative nature of Plaintiff's push justified Defendant's responsive violent conduct, thus qualifying Defendant for Section 9:2800.19 Immunity and negating the necessity for a comparative fault assessment. Only when it is established that a defendant's retaliatory force was unreasonable and not qualifying for a defense or immunity, would a comparative fault analysis be required. Such a finding of unreasonable retaliatory force by a defendant would necessarily imply some degree of fault on a defendant. It is not conceivable that the district court undertook a comparative fault analysis to allocate 100% fault to Plaintiff in light of the district court's holding on "consent" and "justifiable battery."

district court's conclusion that Defendant's use of force was reasonable, triggering Section 9:2800.19 Immunity that barred Plaintiff from any recovery.

Given these errors in interpreting "consent" and assessing reasonable force, we are compelled to undertake a *de novo* review of the interdicted findings and perform a comparative fault analysis. This standard allows the appellate court to review the evidence independently and render a judgment based on a comprehensive assessment of the record. *Ferrell*, 94-1252, p. 7, 650 So.2d at 747; *Landry*, 02-1443, p. 15, 851 So.2d at 954.

**DISCUSSION**

We reverse the district court's May 11, 2023 judgment dismissing Plaintiff's claims against Defendant with prejudice. The district court overlooked the need to address comparative fault due to its incorrect initial findings on "consent" and "justifiable battery." This Court must now perform a *de novo* review and assess the distribution of fault based on the complete record. Our review assigns 40% of the fault to Plaintiff and 60% to Defendant, considering that under a proper application of two distinct legal principles of "consent" and "justifiable battery" without the conflation of principles, Plaintiff did not "consent" to the escalation to physical violence, and Defendant's response was not justifiably proportionate.

Regarding damages, Plaintiff seeks $329,000.00 in general damages. Although the record supports an award for general damages due to the severity of the injuries and the impact on Plaintiff, we reject Plaintiff's quantum analysis for general damages. Our review of the record and case law support an award of $55,000.00 in general damages. Plaintiff also requests an award of $3,606.00 in medical specials. We find that the record evidence is insufficient and does not support the awarding of medical expenses.

9

For the following reasons, we find that comparative fault applies because Plaintiff proved that he did not "consent" to the battery[5] and Defendant failed to prove that it was a "justifiable battery."[6]

## A. Comparative Fault

In *Lombard v. Nobre,* 23-0746, pp. 8-10 (La. App. 4 Cir. 6/18/24), --- So.3d ----, ----, 2024 WL 3041365, at *3-4, we held:

> Traditionally, "under the aggressor doctrine, the plaintiff [was] deemed to have consented to the physical retaliation by provoking the defendant, thereby relieving the defendant of liability for any damages that may result." [*Landry*], 02-1443, p. 13, 851 So.2d at 953. The aggressor doctrine precluded tort recovery in an "all or nothing" approach. *Id.* The aggressor doctrine was a form of implied consent.
>
> In *Landry*, the Supreme Court held that the aggressor doctrine is inconsistent with the adoption of Louisiana's pure comparative fault regime. *Id.,* 02-1443, p. 18, 851 So.2d at 956. The Supreme Court reasoned that the actions of the plaintiff can adequately be condemned through concepts of comparative fault, duty/risk, and privileges, which would eliminate the inequalities inherent in the "all or nothing" approach of the aggressor doctrine. *Id.*, 02-1443, p. 13, 851 So.2d at 953.
>
> The *Landry* case effectively removed the bar to recover damages under the former expansive analysis of "consent." Courts are now directed to perform a comparative fault analysis when the plaintiff does not "consent" to the battery but nevertheless provoked physical retaliation by the defendant who does not enjoy immunity from liability or privilege under La. R.S. 9:2800.19 due to unreasonable retaliatory force.

---

[5] To prove a battery occurred, the plaintiff must prove "all *prima facie* elements of the tort, including lack of consent to the invasive conduct." *Landry*, 02-1443, p. 15, 851 So.2d at 954.

[6] After a plaintiff in a battery case proves a *prima facie* case, the defendant may then seek to prove lack of fault on the basis that his actions were privileged or justified, as in self-defense. *Id.*; *Brungardt v. Summitt*, 08-0577, pp. 11-12 (La. App. 4 Cir. 4/8/09), 7 So.3d 879, 887.

Accordingly, as in *Lombard*, we find that comparative fault applies in intentional tort battery cases when: (1) the plaintiff does not consent to the battery; and (2) the defendant fails to prove self-defense under La. R.S. 9:2800.19 immunity.

### *(1) Consent*

> Louisiana Civil Code article 2315 provides that a person may recover damages for injuries caused by a wrongful act of another. The fault concept includes the intentional tort of battery. *Landry v. Bellanger*, 02-1443, p. 6 (La. 5/20/03), 851 So.2d 943, 949. Battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact ..." *Id.* (quoting *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987)). "The defendant's intention need not be malicious nor need it be an intention to inflict actual damage." *Id.* "It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent." *Id.*

*Lombard*, 23-0746, pp. 7-8, --- So.3d at ----, 2024 WL 3041365, at *3.

To prove a battery occurred, the plaintiff must prove "all *prima facie* elements of the tort, including lack of consent to the invasive conduct." *Landry*, 02-1443, p. 15, 851 So.2d at 954. Consent is a bar to recovery for the intentional infliction of harmful or offensive touching. *Cole v. State Dep't of Pub. Safety & Corr.*, 01-2123, p. 11 (La. 9/4/02), 825 So.2d 1134, 1142 (citation omitted). "Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances." *Id.* (citation omitted). When the plaintiff "voluntarily participates in an altercation" and "reasonably anticipated" the forcible response by the defendant, the plaintiff may not recover for the injuries. *See id.*, 01-2123, p. 12, 825 So.2d at 1143.

In *Lombard*, 23-0746, p. 9 n. 3, --- So.3d at ----, 2024 WL 3041365, at *4, we noted:

11

In intentional tort battery cases after *Landry*, in determining whether the plaintiff is barred from recovery for failing to prove a battery occurred due to the plaintiff consenting to the battery, "consent" analyses are now limited to inquiries as to the willing and voluntary nature of the altercation. *See, e.g., Guillot* [*v. Guillot*], [14-364], p. 14 [(La. App. 3 Cir. 12/23/14)], 161 So.3d [841,] 850, where the court held that the plaintiff consented to the battery by the defendant and was precluded from applying the comparative fault doctrine because he failed to prove that a battery occurred. The court noted that the plaintiff consented to be hit as soon as he exited his vehicle because he told his wife to call the police after taking a boat that he was not supposed to take and he continued toward the defendant knowing trouble was coming. *Id. See also Richard v. Mangion*, 535 So.2d 414, 416 (La. App. 3d Cir. 1988), where the plaintiff and the defendant showed up to a rope swing prepared to engage in "fisticuffs" and fully prepared and contemplated the physical altercation. Classmates advanced the idea of a fight, and the plaintiff in anger challenged the defendant to fight. *Id*. The court concluded that by showing up to the rope swing, the plaintiff implied that he was willing to engage in a fight and incur blows because when the plaintiff left his house to meet the defendant at the rope swing, he knew that showing up would demonstrate his willingness and voluntariness to fight. *Id*. The court recognized that two parties can expressly consent to fight. *Id.*, 535 So.2d at 416-17.

We find that the district court erred in its application of the laws regarding "consent" in holding that Plaintiff consented to the battery by "Plaintiff pushing Defendant in a forceful manner . . . to provoke the physical retaliation distributed by Defendant." Plaintiff and Defendant did not anticipate that their altercation would lead to a physical fight, they did not arrive at the property to fight, and they had no previous communications about a fight taking place. Unlike the plaintiff in *Guillot* and *Richard*, neither Plaintiff nor Defendant entered into the altercation knowing that there would be a physical or violent altercation that would result in serious bodily injury.

The evidence in the record does not support the district court's conclusion that Plaintiff consented to the battery committed by Defendant. At no time during the heated verbal exchange did Plaintiff threaten to harm Defendant or invite or encourage him to engage in a physical altercation. Plaintiff shoved Defendant to distance himself from Defendant in order to enter his apartment; no evidence was presented that Plaintiff intended to engage in a violent physical altercation with Defendant. Plaintiff's attempt to retreat from the confrontation contradicts the notion that he voluntarily participated in a physical altercation with Defendant. Plaintiff proved that he did not voluntarily participate in the altercation and did not reasonably anticipate the extent of force used by Defendant.

The district court erred in conflating issues and continued to apply principles and erroneous legal analyses associated with the former aggressor doctrine, which has been ruled contrary to Louisiana's tort system in *Landry*. We find that Plaintiff proved a *prima facie* case of battery as he did not "consent" to the battery.

*(2) Section 9:2800.19 Immunity ("Justifiable Battery")*

"To escape liability for damages resulting from a battery, the defendant may prove that 'his actions were privileged or justified, such as self-defense' under La. R.S. 9:2800.19." *Lombard*, 23-0746, p. 8, --- So.3d at ----, 2024 WL 3041365, at *3 (citing *Landry*, 02-1443, p. 15, 851 So.2d at 954). La. R.S. 9:2800.19[7] refers to

---

[7] La. R.S. 9:2800.19 states:

> **§ 2800.19. Limitation of liability for use of force in defense of certain crimes**
>
> A. A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property in accordance with R.S. 14:19 or 20 is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence.

La. R.S. 14:19,[8] the justifiable use of force or violence statute, to determine

whether a defendant in a civil case used reasonable force in defense of a person or

---

B. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses to the defendant in any civil action if the court finds that the defendant is immune from suit in accordance with Subsection A of this Section.

[8] La. R.S. 14:19 states:

### § 19. Use of force or violence in defense

A. (1) The use of force or violence upon the person of another is justifiable under either of the following circumstances:

(a) When committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.

(b)(i) When committed by a person lawfully inside a dwelling, a place of business, or a motor vehicle as defined in R.S. 32:1(40) when the conflict began, against a person who is attempting to make an unlawful entry into the dwelling, place of business, or motor vehicle, or who has made an unlawful entry into the dwelling, place of business, or motor vehicle, and the person using the force or violence reasonably believes that the use of force or violence is necessary to prevent the entry or to compel the intruder to leave the dwelling, place of business, or motor vehicle.

(ii) The provisions of this Paragraph shall not apply when the person using the force or violence is engaged, at the time of the use of force or violence in the acquisition of, the distribution of, or possession of, with intent to distribute a controlled dangerous substance in violation of the provisions of the Uniform Controlled Dangerous Substances Law.

(2) The provisions of Paragraph (1) of this Section shall not apply where the force or violence results in a homicide.

B. For the purposes of this Section, there shall be a presumption that a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of force or violence was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the premises or motor vehicle, if both of the following occur:

(1) The person against whom the force or violence was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.

property. La. R.S. 14:19 sets forth situations in which a battery may be justifiable, depending on the reasonable belief of the defendant's use of force or violence in defense, the danger presented to the defendant or others, and the need for the use of force or violence. "[I]n order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant's safety and the force employed cannot be excessive in degree or kind." *Landry*, 02-1443, p. 16, 851 So.2d at 955 (citing David W. Robertson, *The Aggressor Doctrine*, 1 S.U. L. Rev. 82, 90 (1975)).

Anything greater than this standard will be excessive and unnecessary force, and falls outside of self-defense, making one liable for injuries caused by excessive force. *Domingue ex rel. Domingue v. Allied Disc. Tire & Brake, Inc.*, 02-1338, p. 5 (La. App. 1 Cir. 5/9/03), 849 So.2d 690, 695 (citing *Stewart v. Vidrine*, 408 So.2d 413, 416 (La. App. 1st Cir. 1981)). The term "excessive force," "[m]ust be limited to such as appears reasonably necessary to achieve the purpose for which the defense was given, and anything more is excessive and beyond the protection of the privilege." Wex S. Malone, *Private Law, Work of the Louisiana Appellate Courts for the 1964-65 Term*, 26 La. L. Rev. 517, 518 (1966). Factors to be considered in determining the reasonableness of force include: "the character and

---

(2) The person who used force or violence knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using force or violence as provided for in this Section and may stand his or her ground and meet force with force.

D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry.

reputation of the attacker, the belligerence of the aggressor, a large difference in size and strength between the parties, an overt act by the attacker, threats of serious bodily harm, and the impossibility of peaceful retreat." *Domingue*, 02-1338, pp. 5-6, 849 So.2d at 695 (citing *Slayton v. McDonald*, 29,257, p. 6 (La. App. 2 Cir. 2/26/97), 690 So.2d 914, 918); *Levesque v. Saba*, 402 So.2d 266, 270 (La. App. 4th Cir. 1981)).

In *Dean v. Nunez*, 423 So.2d 1299, 1301 (La. App. 4th Cir. 1982), the defendant, Nunez, had threatened to damage a tape recorder and trespassed onto the property of the plaintiff, Dean, to turn off the tape recorder. In response, Dean chose to place himself in between the tape recorder and Nunez, and when Nunez attempted to reach for the recorder, Dean pushed him away to block his access to the tape recorder. *Id.* Nunez, in response to the push and believing he was about to receive bodily harm, punched Dean. *Id.* This Court found that Dean's push was not sufficient to justify Nunez's forcible punch and rejected Nunez's claim of self-defense. *Id. See also Dowden v. Cutright*, unpub., 13-747 (La. App. 3 Cir. 12/11/13), 2013 WL 6536287, at \*3 (finding that the "slight push" by the plaintiff, Dowden, of the defendant, Cutright, did not justify Cutright's use of responsive force and continuous beating of Dowden).

However, in *Landry*, the Court found that the defendant, Bellanger, was acting in self-defense when he punched the plaintiff, Landry. 02-1443, pp. 16-17, 851 So.2d at 955. Landry had been verbally provoking Bellanger with the threat of physical violence inside a bar and physically and aggressively pushed Bellanger with his chest once outside of the bar and continued to threaten physical violence. *Id.*, 02-1443, pp. 17-18, 851 So.2d at 955-56. The Court found Bellanger's punch was justified under the circumstances and did not involve excessive force,

16

explaining that Landry outweighed Bellanger by 90 pounds and Landry was intoxicated, causing his actions to be unpredictable. *Id.*, 02-1443, p. 18, 851 So.2d at 956.

We find the case *sub judice* is similar to *Dean* and *Dowden* and distinguishable from *Landry*. The district court cited the following undisputed facts and testimony to support its finding that Plaintiff was solely at fault:

- The undisputed fact that Defendant only struck Plaintiff one time;

- Plaintiff's testimony that he initially believed Defendant had pushed him in the same manner Plaintiff pushed Defendant and that he was unaware Defendant punched him in the face and remained unaware until Defendant informed Plaintiff what he had actually done;

- The undisputed fact that immediately after striking Plaintiff, Defendant ceased all further contact; and

- Defendant's testimony that he was shocked by Plaintiff[']s actions and did not expect nor did he foresee the push.

The district court erred in finding that the use and amount of force used by Defendant was reasonable and in placing heightened emphasis on Plaintiff's initial provocation and failing to determine whether Defendant's subjective beliefs were reasonable. The altercation in *Landry* is similar on its face to the encounter in the case *sub judice* where Plaintiff pushed Defendant causing Defendant to punch Plaintiff. However, unlike in *Landry*, Plaintiff was not threatening physical violence. Similar to *Dean*, Plaintiff pushed Defendant away to create space between the two men. There is also no indication of the reasonableness factors weighing against the reasonableness of the push in this case as in *Dean* and *Dowden*.

We find that the physical force, which Defendant used against Plaintiff, was unreasonable. Plaintiff and Defendant were long-time friends without any history of adversity and were not in an environment conducive to unexpected behaviors, such as a bar room encounter by strangers. Moreover, Defendant sustained no injury from Plaintiff's push. Plaintiff had distanced himself from Defendant by pushing him. By Defendant's own account, Plaintiff's push "made [Defendant] step back." Plaintiff had turned away from Defendant to go inside his apartment when Defendant struck Plaintiff in the face. Defendant's response, a forceful punch leading to Plaintiff's unconsciousness, exceeded what could be deemed a reasonable defensive action, particularly given their history as friends unaccustomed to physical altercations. Defendant failed to establish any reasonable basis or grounds for apprehension or fear, required to justify self-defense, such as in the *Landry* case. Because Defendant failed to show that, objectively, his use of force was reasonable under the circumstances, his claim of self-defense must fail.

Accordingly, we find that Defendant is liable for the battery committed on Plaintiff, and we proceed to conduct a *de novo* review of the record to address the allocation of fault.

### (3) Allocation of Fault

La. C.C. art. 2323 provides:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of [La.] R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another

18

person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

"In *Landry*, the Supreme Court interpreted La. C.C. art. 2323 as requiring a comparative fault assessment of both the fault of the plaintiff and the defendant where the acts of both parties are negligent or the acts of both parties are intentional." *Lombard*, 23-0746, p. 12, --- So.3d at ----, 2024 WL 3041365, at *6 (citing *Landry*, 02-1443, p. 18, 851 So.2d at 956). "It is only where a plaintiff is negligent in contributing to his injuries and the defendant has committed an intentional act, that assessment of the comparative fault of the plaintiff is prohibited under [La.] C.C. art. 2323, paragraph (C)."[9] *Id.*, 23-0746, pp. 12-13, --- So.3d at ----, 2024 WL 3041365, at *6 (quoting *Inzinna v. Walcott*, 02-0582, p. 9 (La. App. 1 Cir. 11/21/03), 868 So.2d 721, 727 (citing *Landry*, 02-1443, p. 18, 851 So.2d at 956)). "Otherwise, . . . absent a qualifying privilege, any provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact." *Inzinna*, 02-0582, p. 9, 868 So.2d at 727 (citing *Landry*, 02-1443, p. 16, 851 So.2d at 955).

---

[9] For example, in *Le v. Nitetown, Inc.*, 10-1239, p. 1 (La. App. 3 Cir. 7/20/11), 72 So.3d 374, 375, the Third Circuit found that the trial court erred as a matter of law in reducing the plaintiffs' damages under comparative fault where the defendant was found liable for intentional tort and the plaintiffs' damage awards was based on the comparative negligence of one of the plaintiffs.

We find that the acts of both Plaintiff and Defendant were intentional and that the conduct of Defendant was without justification, thus, we proceed with determining the relative fault of the parties.

In *Lombard*, we identified the factors to consider in allocating fault in intentional tort battery cases:

> In determining the percentages of fault, the trier of fact must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La. 1985). Consideration of several factors ("Watson factors") aids in the determination of a proper degree of fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. *Watson*, 469 So.2d at 974. These same factors guide an appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed. *Duncan* [*v. Kansas City S. Ry. Co.*], 00-0066 at 11 [(La. 10/30/00)], 773 So.2d [670] at 681.

> *Tisdale v. Hedrick*, 22-01072, p. 8 (La. 3/17/23), 359 So.3d 484, 490.

> In addition to the *Watson* factors and expanding on them for intentional tort battery cases,[10] we find that the following considerations are relevant in assessing the reasonableness of the conduct of the parties: (1) the nature of the initial actions that provoked the actor; (2)

---

[10] *Watson* prefaced its recitation of factors, stating, "[i]n assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: ..." 469 So.2d at 974. We find that by use of the term "including" before listing the appropriate factors to be considered, the *Watson* court intended the list of factors to be illustrative, not exhaustive. *See id.* (footnote in original).

> the reasonableness of force used by the actor relative to the amount of force used by the other party; and (3) the extent of injuries received by each party.[11]

*Id.*, 23-0746, pp. 13-14, --- So.3d at ----, 2024 WL 3041365, at *7.

The *Watson* factors and other considerations dictate a finding of greater liability for the individual who responds with more severe violence, particularly taking into account the extent of injuries by the parties. This heightened allocation of liability on the most violent participant ensures that those who cause greater harm are held to a higher degree of accountability, which is a fundamental principle of justice and maintaining societal order. Holding the extreme aggressor more liable underscores the importance of proportionate responses and discouragement of excessive violence. This distribution of liability also reflects societal values that condemn unnecessary violence. By penalizing the most aggressive behaviors more severely, this allocation of fault prioritizes restraint, dialogue, and peaceful resolution over physical aggression and serves as a deterrent against excessive force by making the consequences of aggressive responses clear and significant.

For instance, in *Dowden*, 13-747, 2013 WL 6536287, at *3, the court found that the "slight push" by the plaintiff, Dowden, of the defendant, Cutright, did not justify Cutright's use of responsive force and continuous beating of Dowden. The court allocated 100% fault to Cutright after finding that Cutright used unreasonable and excessive force and Dowden's initial actions were reasonable under the circumstances. *Id*. The court found that Dowden "lightly touched" Cutright to push

---

[11] We note that in *Landry*, 02-1443, p. 13, 851 So.2d at 953, the Supreme Court held that "the aggressor doctrine no longer has a place in Louisiana tort law." Nonetheless, if Plaintiff is deemed to have provoked Defendant, the court can take this factor into consideration in determining percentages of fault under La. C.C. art. 2323. *Id.* (footnote in original).

her away as she was within inches of Dowden's face. *Id.*, 13-747, 2013 WL 6536287, at *2. There was heated verbal communication between Cutright and Dowden with no threat of physical force to Cutright. *Id.*, 13-747, 2013 WL 6536287, at *3.

However, in *Williams v. Moore*, 45,299, p. 1 (La. App. 2 Cir. 5/19/10), 36 So.3d 1214, 1215-16, the trial court found the plaintiff's initial actions were provocative and, after a bench trial, the trial court found that both parties were equally at fault and reduced the total damage amount by half. The judgment was affirmed on appeal. *Id.* at p. 6, 36 So.3d at 1218. In *Williams*, while the plaintiff was in a bar with his girlfriend, the plaintiff alleged that the defendant approached the plaintiff's girlfriend and touched her inappropriately. *Id.* at p. 1, 36 So.3d at 1215. Seeing this, the plaintiff told the defendant that the woman was his girlfriend and advised him to leave her alone. After a verbal exchange, the couple walked toward the exit. *Id.* The plaintiff testified that, as he walked out of the bar, he "push[ed] or bump[ed]" the defendant, while the defendant and his best friend claimed that the plaintiff shoved the defendant and then hit him in the eye; the trial court did not determine who swung first. *Id.* at pp. 4-5, 36 So.3d at 1217. The defendant responded by punching the plaintiff in the face, causing him to fall to the ground. *Id.* at p. 4, 36 So.3d at 1217. The plaintiff was treated on the scene by emergency medical personnel and was ultimately taken to the emergency room. *Id.* at p. 1, 36 So.3d at 1215. As a result of the attack, the plaintiff sustained multiple facial fractures including a broken nose and an orbital "blow-out." *Id.*[12]

---

[12] *Compare Landry*, where the Court did not apply comparative fault because it found that the defendant, Bellanger, was acting in self-defense when he punched the plaintiff, Landry, and was immune from liability under La. R.S. 9:2800.19. *Id.*, 02-1443, pp. 16-17, 851 So.2d at 955. Landry had been verbally provoking Bellanger with the threat of physical violence inside a bar

A review of the record in the case *sub judice,* in conjunction with the *Watson* factors, other considerations, and persuasive case law, supports the conclusion that Defendant bears significantly more fault than Plaintiff with respect to the nature of the conduct and the relationship to the damage. Plaintiff initially pushed Defendant away. Defendant responded by punching Plaintiff in the face, causing him to lose consciousness. The force used by Defendant was unreasonable. At the time Defendant struck Plaintiff, Plaintiff had pushed Defendant back and had turned away from Defendant to go inside his apartment. The amount of force used by Defendant was disproportionate to the amount of force used by Plaintiff. Plaintiff suffered serious physical injuries requiring emergency room care and follow-up treatment, while Defendant suffered no physical injuries.

The significant risk introduced by Defendant's conduct, the severe consequence of his action (Plaintiff's unconsciousness), and the absence of any immediate threat justifying such an extreme response clearly align with the principles underpinning the *Watson* factors and other considerations. We noted a similar escalation of violence in *Lombard*:

> The initial physical contact by Plaintiff, a push, may have been a minor, somewhat inadvertent escalation of an ongoing altercation which is slightly distinguishable from the bar room altercation in the *Williams* case and the reasonable nature of the initial actions in *Dowden*. [Defendant]'s response — a forceful punch — was a deliberate and dangerous escalation.

*Id.*, 23-0746, p. 17, --- So.3d at ----, 2024 WL 3041365, at *8.

---

and physically and aggressively pushed Bellanger with his chest once outside of the bar and continued to threaten physical violence. 02-1443, pp. 17-18, 851 So.2d at 955-56. The Court found Bellanger's punch was justified under the circumstances and did not involve excessive force, explaining that Landry outweighed Bellanger by 90 pounds and Landry was intoxicated, causing his actions to be unpredictable in a barroom setting. *Id.*, 02-1443, p. 18, 851 So.2d at 956.

> Application of the laws of comparative fault in battery cases must work to encourage individuals to respond to heated engagements and provocations proportionately. Such an application supports the prevention of escalation of violence and ensures that self-defense claims are justified and not used as a cover for retaliatory excessive violence. While individuals may react to protect their persons and property, responses should not exceed what is necessary to avert the threat. The initial shove by Plaintiff, while slightly provocative, did not justify the excessive force used in response by [Defendant]. Allocating a distribution of liability reflects an attempt to quantify the culpability of each party based on their actions' severity and consequences. The *Watson* factors and above public policy concerns do not alleviate Plaintiff of all liability for his actions; instead, they dictate that [Defendant] must be assigned greater liability due to his more aggressive response to the non-threatening situation.

*Id.*, 23-0746, p. 18, --- So.3d at ----, 2024 WL 3041365, at *8.

Therefore, we assign 40% of the fault to Plaintiff for initiating physical contact and 60% to Defendant for his disproportionate and dangerous reaction.

**B. Damages**

"General damages do not have a common denominator and are determined on a case by case basis." *Lawrence v. Gov't Emps. Ins. Co.*, 13-1296, p. 31 (La. App. 4 Cir. 10/15/14), 151 So.3d 917, 936 (quoting *Glasper v. Henry*, 589 So.2d 1173, 1180 (La. App. 4th Cir. 1991)). "General damages include 'physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors which affect the victim's life.'" *Id.* "The primary objective in awarding damages is to restore the injured party to the position she was in immediately preceding the accident." *Id.* (quoting *McCray v. Abraham*, 550 So.2d 244, 248 (La. App. 4th Cir. 1989)). "Factors to be considered in assessing quantum for pain and suffering are severity and duration." *Id.* (quoting *Glasper,* 589 So.2d at 1180).

24

As a result of the battery committed by Defendant, Plaintiff suffered a concussion with a loss of consciousness and sustained a lip laceration, closed fracture of the nasal bone, maxillary fracture, and whiplash to his neck. He suffered numbness, headaches, neck pain, sleep disruption, and vision problems. Plaintiff was taken to the emergency room after the battery, and he received medical treatment for his injuries over the course of twenty-two months.

We reject Defendant's claim of $329,000.00 in general damages citing cases involving vehicular accidents.[13] We award $55,000 in general damages finding comparable cases involving physical altercations awarded between $40,000.00 and $75,000.00.[14] This award is consistent with awards of $2,500 in general damages per month of treatment for soft tissue injuries. *See Lombard*, 23-0746, pp. 21-22, --- So.3d at ----, 2024 WL 3041365, at *10 (collecting cases).

With respect to Plaintiff's request for medical expenses in the amount of $3,606.00, this Court cannot ascertain an amount of medical expenses from the

---

[13] *See* cases cited by Plaintiff indicating the general damage awards from vehicular accidents: *Bernard v. Lott*, 95-0167 (La. App. 4 Cir. 12/28/95), 666 So.2d 702 (plaintiff suffered trauma to the head from an automobile accident resulting in a brain injury, decreased I.Q., difficulties in memory and concentration, and a borderline personality disorder and was awarded $750,000 in general damages); *McMahon v. Regional Transit Authority*, 96-1770 (La. App. 4 Cir. 12/10/97), 704 So.2d 392 (plaintiff suffered a skull fracture, closed head injury, post traumatic migraine headaches and post-concussion syndrome from a bus accident and was awarded $500,000); *Orillion v. Carter*, 93-1190 (La. App. 1st Cir. 1994), 639 So.2d 461 (plaintiff suffered sinus fractures, facial lacerations, and possible frontal lobe damage from an automobile accident and was awarded $150,000); *Dubois v. State Farm Ins. Co.*, 571 So.2d 201 (La. App. 3d Cir. 1990)(plaintiff suffered a broken nose, headaches, and soft-tissue injuries from an automobile accident and was awarded $104,500); and *Weaver v. Siegling*, 569 So.2d 97 (La. App. 4th Cir. 1990)(plaintiff suffered a concussion, cervical and lumbar sprain resulting in 10 to 15% permanent disability, and PTSD from an automobile accident and was awarded $100,000).

[14] *See Williams*, 45,299, 36 So.3d 1214 (plaintiff sustained multiple facial fractures including a broken nose and an orbital "blow-out" from a physical altercation and was awarded $40,000.00); *Berg v. Zummo*, 00-1699 (La. 4/25/01), 786 So.2d 708 (La. 2001)(plaintiff sustained a concussion with loss of consciousness, trauma to the head, several lacerations and bruises, a broken nose, a torn tendon in the upper lip, and scratches on the abdomen from a physical altercation and was awarded $50,000); *Frazer v. St. Tammany Par. Sch. Bd.*, 99-2017 (La. App. 1 Cir. 12/22/00), 774 So.2d 1227 (plaintiff sustained a cerebral concussion, headaches, two years of post-traumatic stress disorder, residual lobe deficits, and hand tremors from a fight and was awarded $75,000).

medical records submitted by Plaintiff; thus, Plaintiff failed to prove medical expenses. We decline to award any medical expenses incurred by Plaintiff.

**CONCLUSION**

We reverse the May 11, 2023 judgment finding no liability on the part of Defendant. Following our *de novo* review of the record, we find that Defendant is 60% liable for the battery committed on Plaintiff, and Plaintiff's general damages total $55,000.00. Accordingly, we award Plaintiff general damages in the amount of $33,000.00 plus judicial interest from the date of judicial demand. The parties are responsible for their own costs and attorney's fees.

**REVERSED AND RENDERED**